October 7, 1993 UNITED STATES COURT OF APPEALS
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-1050

THEODORE LEBLANC,

Plaintiff, Appellant,

v.

GREAT AMERICAN INSURANCE COMPANY,

Defendant, Appellee.

ERRATA SHEET

The opinion of this Court issued on September 29, 1993, is
amended as follows:

Page 2, line 8: add a "," after " . . . 1993)"

Page 2, section I., line 4: insert "of this case" after
"history"

Page 2, third line from the bottom: delete "," after
"appeal"

Page 3, line 12: add ", 1992," after December 21

Page 4, line 13: delete "Id;" and insert "Id.; see"

Page 6, line 8: delete the sentence beginning with, "This
conclusion . . . judgment."

Page 9, section III., line 2: add a "," after "court"

Page 12, footnote 2: delete the last two sentences
beginning with, "Lack of reference to the . . . (1986))."

Page 13, line 3: add "the" before "plaintiff"

Page 13, line 4: add "the" before "plaintiff"

Page 13, line 11: add "the" before "plaintiff"

Page 13, line 13: add "the" before "plaintiff"

Page 20, line 9-10: delete "acting President" and insert

"then-acting president"

Page 26, footnote 8: delete "include" and insert "were"

Page 32, line 10: delete the "s" from "demonstrates"

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-1050

THEODORE L. LeBLANC,

Plaintiff, Appellant,

v.

GREAT AMERICAN INSURANCE COMPANY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Selya, Circuit Judge,

Campbell, Senior Circuit Judge,

and Cyr, Circuit Judge.

Walter M. Phillips, Jr., with whom Phillips and Phelan,

Sigmund J. Roos and Peabody & Brown were on brief for appellant.

Kalvin M. Grove with whom Joel W. Rice and Fox and Grove,

Chartered were on brief for appellee.

September 29, 1993

CAMPBELL, Senior Circuit Judge. On October 19,

1990, the defendant-appellee, Great American Insurance

Company ("Great American"), terminated its employment of the

plaintiff-appellant, Theodore L. LeBlanc, who was then fifty-

nine years old. LeBlanc brought this action in the district

court against his former employer pursuant to the Age

Discrimination in Employment Act ("ADEA"), 29 U.S.C. 621-

634 (1985 & Supp. 1993), and Mass. Gen. L. ch. 151B, 4.

The district court entered summary judgment in Great

American's favor, and this appeal followed. We affirm.

I.

JURISDICTION

Great American contends that this court is without

jurisdiction over LeBlanc's appeal from the district court's

order granting summary judgment in its favor. To follow this

argument, it is necessary to understand the procedural

history of this case.

The district court rendered its final judgment

granting summary judgment to Great American on November 2,

1992. On November 10, LeBlanc moved for reconsideration

under Fed. R. Civ. P. 59(e). On December 2, 1992, while this

motion for reconsideration was still pending, LeBlanc filed a

notice of appeal from the November 2, 1992, grant of summary

judgment. Because at the time LeBlanc filed his notice of

appeal the district court had not yet ruled on LeBlanc's

-4-

motion for reconsideration, we determined that we were

without jurisdiction to consider the appeal and accordingly

dismissed it. On December 21, 1992, the district court

denied LeBlanc's motion for reconsideration. LeBlanc filed a

second notice of appeal on December 28. The second notice of

appeal asked for relief "from the Order entered December 21,

1992, denying Plaintiff's Motion for Reconsideration of the

court's previously entered order of November 2, 1992,

granting summary judgment in favor of defendant Great

American Insurance Companies [sic]."

Great American argues that LeBlanc's second notice

of appeal, because it only challenges the district court's

denial on December 21, 1992 of LeBlanc's Rule 59(e) motion,

does not confer jurisdiction upon this court to entertain an

appeal from the district court's judgment of November 2,

1992, granting summary judgment. Appellee insists we possess

jurisdiction only to consider the narrower factors relevant

to the district court's denial of LeBlanc's motion for

reconsideration. We disagree.

It is true that Fed. R. App. P. 3(c) states that

"[t]he notice of appeal shall specify the . . . order or part

thereof appealed from." Rule 3(c)'s "commands are

jurisdictional and mandatory." Kotler v. American Tobacco

Co., 981 F.2d 7, 10-11 (1st Cir. 1992) (citing Smith v.

Barry, U.S. , 112 S. Ct. 678, 682, 116 L. Ed. 2d 678

-5-

(1992); Torres v. Oakland Scavenger Co., 487 U.S. 312, 315-

16, 108 S. Ct. 2405, 2407-08, 101 L. Ed. 2d 285 (1988)).

Nevertheless, courts have been admonished to interpret Rule

3(c) liberally. Id.; see Foman v. Davis, 371 U.S. 178, 181-

82, 83 S. Ct. 227, 228-30, 9 L. Ed. 2d 222 (1962).

In general, "an appeal from the denial of a Rule

59(e) motion is not an appeal from the underlying judgment."

Mariani-Giron v. Acevedo-Ruiz, 945 F.2d 1, 3 (1st Cir. 1991)

(citing Rodriguez-Antuna v. Chase Manhattan Bank Corp., 871

F.2d 1, 2-3 (1st Cir. 1989); Pagan v. American Airlines,

Inc., 534 F.2d 990, 992-93 (1st Cir. 1976)). Yet this rule

is not inflexible. This circuit has allowed a timely appeal

from the denial of a timely Rule 59(e) motion to serve as

notice of an appeal from the underlying judgment in cases

where the appellant's intent to appeal from the judgment is

clear. Id.; see Foman, 371 U.S. at 181-82. In making this

assessment, we consider the notice of appeal "in the context

of the record as a whole." Kotler, 981 F.2d at 11.

Foman v. Davis involved facts very similar to those

in this case. The district court had dismissed the complaint

for failure to state a claim upon which relief could be

granted. The next day, plaintiff moved to vacate the

judgment, pursuant to Fed. R. Civ. P. 59(e), and also moved

to amend the complaint. While the motions were still

pending, plaintiff filed a notice of appeal from the district

-6-

court's dismissal of the complaint. Shortly thereafter, the

district court denied the plaintiff's motions. The plaintiff

then filed a second notice of appeal from the denial of the

motions.

Although the parties in Foman briefed and argued

the merits of the district court's dismissal of the complaint

as well as the district court's denial of the plaintiff's

motions, the court of appeals, of its own accord, dismissed

the appeal insofar as it was taken from the district court's

dismissal of the complaint. The court of appeals held that

the second notice of appeal was "ineffective to review the .

. . judgment dismissing the complaint because the notice

failed to specify that the appeal was being taken from that

judgment as well as from the orders denying the motions."

Foman, 371 U.S. at 180-81.

In reversing the court of appeals, the Supreme

Court held that "[t]he defect in the second notice of appeal

did not mislead or prejudice the respondent." Id. at 181.

Although the Court agreed that the first premature notice of

appeal had had no effect,1 it ruled that, "[t]aking the two

notices and the appeal papers together, petitioner's

intention to seek review of both the dismissal and the denial

1. Similarly, the first notice of appeal in this case was
without effect. See Fed. R. App. P. 4(a)(4)(iii) (stating

that a notice of appeal filed before the disposition of a
motion under Rule 59 to alter or amend the judgment shall
have no effect).

-7-

of the motions was manifest." Id. The Court found support

for this conclusion from the fact that both parties had

briefed and argued the merits of the dismissal on appeal.

The Court's decision in Foman seems to us to be

dispositive here. LeBlanc's intent to appeal from the

district court's November 2, 1992, grant of summary judgment

was plain. The two notices taken together revealed LeBlanc's

desire to appeal not just from the motion for reconsideration

but also from the underlying judgment.

II.

BACKGROUND

Great American is an all lines insurance company

with its headquarters in Cincinnati, Ohio. As of October

1990, when Great American dismissed LeBlanc, Great American

was divided into four geographical regions: Northeast, South,

Midwest, and West. In addition to these geographical

divisions, Great American was organized according to the

lines of business, distinguishing between personal and

commercial lines of insurance. At the time of his discharge,

LeBlanc was employed by Great American Northeast, Inc. (the

"Northeast Zone") in its commercial lines division.

Great American hired LeBlanc in October 1980 as a

branch manager in its Wheaton, Maryland, office. At that

time, LeBlanc was forty-nine years old. From 1980 through

1988, LeBlanc worked for Great American in Maryland. In

-8-

January 1989, Great American transferred the fifty-seven-

year-old LeBlanc, with his consent, to eastern Massachusetts

to serve as a commercial lines Agency Operations

Representative ("AOR"). The transfer was approved by Al

Conte, then-acting president of the Northeast Zone, who also

agreed to pay for LeBlanc's moving expenses and to give him a

sixteen percent pay raise.

In his capacity as an AOR, LeBlanc was expected to

market Great American commercial insurance to independent

agents or brokers in eastern Massachusetts and assist those

agents and brokers who were already selling Great American's

insurance products. When LeBlanc started in eastern

Massachusetts, he joined Charles DeMartino, then fifty-six

years old, as one of two AORs marketing Great American

commercial lines insurance in eastern Massachusetts. LeBlanc

and DeMartino worked together in eastern Massachusetts until

LeBlanc's discharge.

According to Great American's evidence, which is

not contradicted, the decision to dismiss LeBlanc had its

genesis in August 1990, when Conte began to prepare a budget

for the upcoming year for the Northeast Zone. Because the

Northeast Zone was experiencing financial problems at the

time, Thomas Hayes, Executive Vice-President of Great

American, instructed Conte to submit a leaner budget to

corporate headquarters. Although Conte sought ways to reduce

-9-

expenses without dismissing personnel, he concluded, in

September and early October 1990, that personnel cuts would

have to be made.

Conte decided, with the approval of Hayes and Human

Resources personnel in Cincinnati, to eliminate or leave

vacant five positions in the Northeast Zone. Those people

directly affected by Conte's decision included LeBlanc,

William St. George, a forty-seven-year-old underwriter

working in the Windsor, Connecticut, headquarters of the

Northeast Zone, and Dwight Bowie, the thirty-eight-year-old

Profit Center Manager in Hartford, Connecticut. In addition,

two other vacant positions in the Northeast Zone were

eliminated. They included the AOR Manager in the Syracuse,

New York, office, a position that had already been vacated by

the resignation of Tim Johnson, age twenty-six, and an

underwriting position in Hartford, Connecticut, that had been

vacant for some time.

On October 19, 1990, Great American informed

LeBlanc that he was being dismissed. LeBlanc was told that

the decision to eliminate his position was based on budget

constraints, and not because of his age or his individual

performance. Immediately after LeBlanc's discharge,

DeMartino, the remaining AOR in eastern Massachusetts, who

was then fifty-seven, assumed responsibility for four or five

of the approximately fifteen insurance agents whom LeBlanc

-10-

had serviced. The remaining agents were assigned to

underwriters in Great American's Lancaster, Pennsylvania,

office, which was responsible for underwriting insurance in

eastern Massachusetts.

Approximately nine months later, in July of 1991,

Great American decided to transfer underwriting

responsibility for eastern Massachusetts from the Lancaster

office to the Windsor, Connecticut, office. At that time,

Anne Daley, a thirty-year-old AOR from the Windsor,

Connecticut, office, began to service agents in eastern

Massachusetts. Daley, who had been hired by Great American

prior to LeBlanc's discharge, and who had previously serviced

agents in Connecticut and western Massachusetts, dropped her

Connecticut agents to service the eastern Massachusetts

agents, but continued to service agents in western

Massachusetts. From July through September 1991, Daley

serviced some of LeBlanc's former eastern Massachusetts

agents. Daley left Great American in September 1991. Since

that time, DeMartino has been the only Great American AOR

servicing agents in eastern Massachusetts.

III.

DISCUSSION

A. Summary Judgment

Because our review of a grant of summary judgment

is de novo, we, like the district court, are obliged to

-11-

review the record in the light most favorable to the

nonmoving party, and to draw all reasonable inferences in the

nonmoving party's favor. Mesnick v. General Elec. Co., 950

F.2d 816, 820 (1st Cir. 1991), cert. denied, U.S. ,

112 S. Ct. 2965, 119 L. Ed. 2d 586 (1992); Griggs-Ryan v.

Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment

is properly granted where "the pleadings, depositions,

answers to interrogatories, and admissions on file, together

with affidavits, if any, show that there is no genuine issue

as to any material fact and that the moving party is entitled

to a judgment as a matter of law." Fed. R. Civ. P. 56(c);

see Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113,

1116 (1st Cir. 1993); Lawrence v. Northrop Corp., 980 F.2d

66, 68 (1st Cir. 1992).

Summary judgment is a procedure that involves

shifting burdens between the moving and the nonmoving

parties. Initially, the onus falls upon the moving party to

aver "`an absence of evidence to support the nonmoving

party's case.'" Garside v. Osco Drug, Inc., 895 F.2d 46, 48

(1st Cir. 1990) (quoting Celotex Corp. v. Catrett, 477 U.S.

317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986)).

Once the moving party satisfies this requirement, the

pendulum swings back to the nonmoving party, who must oppose

the motion by presenting facts that show that there is a

"genuine issue for trial." Anderson v. Liberty Lobby, Inc.,

-12-

477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202

(1986) (citing Fed. R. Civ. P. 56(e)); see Goldman, 985 F.2d

at 1116; Lawrence, 980 F.2d at 68; Garside, 895 F.2d at 48

("[A] `genuine issue' exists if there is `sufficient evidence

supporting the claimed factual dispute' to require a choice

between `the parties' differing versions of the truth at

trial.'" (quoting Hahn v. Sargent, 523 F.2d 461, 464 (1st

Cir. 1975), cert. denied, 425 U.S. 904, 96 S. Ct. 1495, 47 L.

Ed. 2d 754 (1976))). To oppose the motion successfully, the

nonmoving party "may not rest upon mere allegation or denials

of his pleading." Anderson, 477 U.S. at 256. Moreover, the

evidence presented by the nonmoving party "`cannot be

conjectural or problematic; it must have substance in the

sense that it limns differing versions of the truth which a

factfinder must resolve at an ensuing trial.'" Mesnick, 950

F.2d at 822 (quoting Mack v. Great Atl. & Pac. Tea Co., 871

F.2d 179, 181 (1st Cir. 1989)). Indeed, "[e]ven in cases

where elusive concepts such as motive or intent are at issue,

summary judgment may be appropriate if the nonmoving party

rests merely upon conclusory allegations, improbable

inferences, and unsupported speculation." Medina-Munoz v.

R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

Thus, to defeat a properly supported motion for summary

judgment, the nonmoving party must establish a trial-worthy

issue by presenting "enough competent evidence to enable a

-13-

finding favorable to the nonmoving party." Goldman, 985 F.2d

at 1116 (citing Anderson, 477 U.S. at 249).

-14-

B. The Age Discrimination Claims2

1. The Legal Framework

In an ADEA discrimination lawsuit, the plaintiff

bears the ultimate "`burden of proving that his years were

the determinative factor in his discharge, that is, that he

would not have been fired but for his age.'" Mesnick, 950

F.2d at 823 (quoting Freeman v. Package Mach. Co., 865 F.2d

1331, 1335 (1st Cir. 1988)). At least when there is little

overt evidence of age discrimination, the case usually

follows the ritualized burden-shifting paradigm in McDonnell

Douglas Corp. v. Green, 411 U.S. 792, 802-05, 93 S. Ct. 1817,

1824-26, 36 L. Ed. 2d 668 (1973); see, e.g., Goldman v. First

Nat'l Bank of Boston, 985 F.2d 1113 (1st Cir. 1993); Lawrence

v. Northrop Corp., 980 F.2d 66 (1st Cir. 1992); Mesnick v.

General Elec. Co., 950 F.2d 816 (1st Cir. 1991), cert.

denied, U.S. , 112 S. Ct. 2965, 119 L. Ed. 2d 586

(1992). Under this formulation, a plaintiff opens with a

prima facie showing of certain standardized elements

suggestive of possible discrimination. McDonnell Douglas,

411 U.S. at 802; Goldman, 985 F.2d at 1117; Lawrence, 980

F.2d at 69; Mesnick, 950 F.2d at 823.

2. LeBlanc does not specifically argue that the district
court erred in granting summary judgment for Great American
under the Massachusetts Anti-Discrimination Act, Mass. Gen.
L. ch. 151B, 4 (1982 & Supp. 1988).

-15-

The elements of the prescribed prima facie case

vary, within the age discrimination context, depending upon

whether or not the plaintiff was dismissed as part of a

reduction in force. If there was no reduction in force, the

plaintiff establishes the prima facie case by demonstrating

that he "(1) was at least forty years of age, (2) met the

employer's legitimate job performance expectations, (3)

experienced adverse employment action, and (4) was replaced

by a person with roughly equivalent job qualifications."

Goldman, 985 F.2d at 1117; see Mesnick, 950 F.2d at 823. But

if the job loss was part of a reduction in force, the

plaintiff need not show replacement by someone with

equivalent job qualifications. Instead, to satisfy element

(4), the plaintiff may demonstrate either that "the employer

did not treat age neutrally or that younger persons were

retained in the same position." Hebert v. Mohawk Rubber Co.,

872 F.2d 1104, 1111 (1st Cir. 1989), quoted in Goldman, 985

F.2d at 1117; Lawrence, 980 F.2d at 69; Connell v. Bank of

Boston, 924 F.2d 1169, 1173 n.5 (1st Cir.), cert. denied,

U.S. , 111 S. Ct. 2828, 115 L. Ed. 2d 997 (1991).

Establishment of the prescribed prima facie case

creates a presumption that the employer engaged in

impermissible age discrimination. See, e.g., Texas Dep't of

Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S. Ct.

1089, 1094, 67 L. Ed. 2d 207 (1981); Goldman, 985 F.2d at

-16-

1117. However, to rebut this presumption, the employer need

only "articulate a legitimate nondiscriminatory reason for

the employee's termination." [Emphasis supplied.] Lawrence,

980 F.2d at 69 (citations omitted). The employer's

obligation is simply one of production. "[T]he burden of

persuasion remains [the employee's] at all times." Id.

(citing Mesnick, 950 F.2d at 823).

Courts have commonly said that once the employer

has proffered a legitimate, nondiscriminatory reason for its

adverse employment decision, the presumption generated by the

employee's prima facie case disappears, and the burden falls

back upon the employee to prove that the reason advanced by

the employer for the adverse employment action constituted a

mere pretext for unlawful age discrimination. See, e.g.,

Goldman, 985 F.2d at 1117; Lawrence, 980 F.2d at 69; Mesnick,

950 F.2d at 823-24. In this circuit, we have always required

not only "minimally sufficient evidence of pretext," but

evidence that overall reasonably supports a finding of

discriminatory animus. Goldman, 985 F.2d at 1117; Lawrence,

980 F.2d at 69-70 (citing Mesnick, 950 F.2d at 825;

Villanueva v. Wellesley College, 930 F.2d 124, 127 (1st

Cir.), cert. denied, U.S. , 112 S. Ct. 181, 116 L. Ed.

2d 143 (1991); Connell, 924 F.2d at 1172; Medina-Munoz, 896

F.2d at 9; Olivera v. Nestle P.R., Inc., 922 F.2d 43, 48 (1st

Cir. 1990)).

-17-

This approach and particularly the latter

aspect, adopted in some but not all circuits was clarified

by the Supreme Court last term. The Court held that, once

the employer succeeds "in carrying its burden of production,

the McDonnell Douglas framework with its presumptions and

burdens is no longer relevant." St. Mary's Honor Ct. v.

Hicks, U.S. , 113 S. Ct. 2742, 2749, L. Ed.2d

(1993). According to the Court:

The presumption [raised by the
plaintiff's prima facie case], having
fulfilled its role of forcing the
defendant to come forward with some
response, simply drops out of the picture
. . . . The defendant's "production"
(whatever its persuasive effect) having
been made, the trier of fact proceeds to
decide the ultimate question: whether
[the] plaintiff has proven "that the
defendant intentionally discriminated
against [him]" because of his race . . .
. The factfinder's disbelief of the
reasons put forward by the defendant
(particularly if disbelief is accompanied
by a suspicion of mendacity) may,
together with the elements of the prima
facie case, suffice to show intentional
discrimination. Thus, rejection of the
defendant's proffered reasons, will
permit the trier of fact to infer the

ultimate fact of intentional
discrimination . . . .

U.S. , 113 S. Ct. at 2749 (citations omitted).

Although the Hicks case arose in the context of a race

discrimination claim brought pursuant to Title VII of the

Civil Rights Act of 1964, the Court's decision seems equally

applicableto agediscrimination lawsuitsbrought underthe ADEA.

-18-

Thus, in an age discrimination case, once the

employer articulates a legitimate, nondiscriminatory reason

for its decision to discharge the employee, the McDonnell

Douglas presumption "drops out of the picture." Hicks,

U.S. , 113 S. Ct. at 2749. The trier of fact must then

simply determine, based on all the evidence, whether the

employer's decision to terminate the plaintiff was motivated

by intentional age discrimination. Id. In reaching this

decision, the trier of fact may consider, along with other

evidence, the evidence put forward to show that the

employer's justification for its adverse employment action

was a pretext. Id. Such evidence, coupled with the elements

of the employee's prima facie case (and, of course, any other

evidence), may (or may not) lead the factfinder to infer that

the employer has engaged in intentional discrimination. Id.

The Hicks decision emanated from an appeal from a

full bench trial. In the context of a summary judgment

proceeding, Hicks requires that, once the employer has

advanced a legitimate, nondiscriminatory basis for its

adverse employment decision, the plaintiff, before becoming

entitled to bring the case before the trier of fact, must

show evidence sufficient for the factfinder reasonably to

conclude that the employer's decision to discharge him or her

was wrongfully based on age. Goldman, 985 F.2d at 1117;

Lawrence, 980 F.2d at 69-70; Villanueva, 930 F.2d at 127-28;

-19-

Connell, 924 F.2d at 1172. "Direct or indirect evidence of

discriminatory motive may do, but `the evidence as a whole .

. . must be sufficient for a reasonable factfinder to infer

that the employer's decision was motivated by age animus.'"

Goldman, 985 F.2d at 1117 (quoting Connell, 924 F.2d at 1172

n.3). Thus, the plaintiff cannot avert summary judgment if

the record is devoid of adequate direct or circumstantial

evidence of discriminatory animus on the part of the

employer. See id. at 1118 (citations and footnote omitted).

2. The Prima Facie Case

The district court granted summary judgment in

Great American's favor on the initial ground that LeBlanc had

failed to make out a prima facie case of age discrimination.

While it is not clear to us that the court erred in this

regard, we prefer because the question is so close to

assume for present purposes that LeBlanc did establish a

prima facie case within the McDonnell Douglas formulation.

This leads us, infra, to examine the adequacy of the evidence

of discriminatory animus, concluding, as we do, that it is

insufficient to create a triable issue.

There is no direct evidence that Great American

discharged LeBlanc because of his age, and the parties agree

that LeBlanc satisfies the first three of the four elements

-20-

of his prima facie case under the McDonnell Douglas

paradigm.3 What is disputed is whether LeBlanc has

established the fourth element of his prima facie case.

Great American argues that, because this is a reduction in

force case, LeBlanc must demonstrate and has failed to do

so that Great American either failed to treat age

neutrally in making its decision to terminate him or retained

younger persons in the same position that he held.4

LeBlanc maintains that Great American did not treat

age neutrally and that it retained younger employees in the

same position that he held because, when Great American

discharged him in October 1990, it continued to employ thirty

other younger AORs in the Northeast Zone. Moreover, LeBlanc

intimates that Great American failed to treat age neutrally

because two of the three people whom Great American actually

discharged as part of its reduction in force, including

LeBlanc, were members of the protected class, i.e., were

3. At the time of his discharge, LeBlanc was fifty-nine
years of age. This satisfies the first element of the
McDonnell Douglas standard, which, in age cases, requires the

plaintiff to be over the age of forty. In addition, LeBlanc
was meeting Great American's job performance expectations.
Finally, LeBlanc experienced adverse employment action,
having been discharged.

4. LeBlanc does not agree that this is a reduction in force
case. He claims that Great American's characterization of
this case as such is merely a pretext for Great American's
discriminatory conduct. Nevertheless, even assuming a
reduction in force occurred, LeBlanc contends that he has
made out a prima facie case.

-21-

forty or older. We are not convinced that the AOR positions

held by the thirty other AORs elsewhere in the region may

properly be considered the "same" position LeBlanc held.

While we agree that the other AOR position in eastern

Massachusetts, which continued to be held by DeMartino (a man

almost identical in age to LeBlanc), was the "same" position,

we are less clear that other AOR positions scattered around

the region say, in Syracuse, New York were the same.

Cf. Barnes v. GenCorp Inc., 896 F.2d 1457, 1465 (6th Cir.)

(retention of younger people in other jobs which plaintiff

was qualified to perform not sufficient to establish a prima

facie case), cert. denied, 498 U.S. 878, 111 S. Ct. 211, 112

L. Ed 2d 171 (1990). We also question whether a company can

be said not to treat age neutrally as a matter of law merely

because two of the three people it discharges pursuant to a

reduction in force belong to the protected class. A sample

of three is a small number from which to draw deductions of

this sort. Still, we shall assume, without deciding, that

these two facts taken together would satisfy the fourth

element of the McDonnell Douglas test, bearing in mind the

Court's admonition that "[t]he burden of making out a prima

facie case is `not onerous.'" Mesnick, 950 F.2d at 823

(quoting Texas Dep't of Community Affairs v. Burdine, 450

U.S. at 253).

3. Great American's Justification

-22-

Assuming, without necessarily finding, that LeBlanc has

established a prima facie case of age discrimination, we turn

next to the second prong of the McDonnell Douglas test. This

calls for determining whether Great American has articulated

a legitimate, nondiscriminatory reason for LeBlanc's

dismissal. We hold that it plainly has.

Great American maintains that it reduced its force

in the Northeast Zone in October 1990 because the region was

experiencing financial difficulties. Al Conte, then-acting

president of the Northeast Zone, stated in an affidavit that

the financial difficulties in the Northeast Zone were

attributable to a downturn in the region's economy, high

fixed expenses, and state-mandated residual assessments, or

government pooling requirements, levied against commercial

lines of insurance.5

Great American asserts that it discharged LeBlanc

as part of this economically-driven reduction in force for a

number of interrelated business reasons. Conte, who actually

made the decision to eliminate LeBlanc's position, stated

that he looked to eliminate this Massachusetts position

because Massachusetts was the least profitable state in the

5. These pooling requirements were charges assessed by state
governments against insurance companies in certain lines of
insurance intended to fund otherwise uninsurable business.
These charges were based upon each insurer's pro rata
percentage of total premiums written in that state for a
given line of insurance.

-23-

Northeast Zone. In addition, eastern Massachusetts, an

extremely small geographic area, was being serviced by two

experienced AORs, LeBlanc and DeMartino. Conte believed that

eastern Massachusetts would be the least harmed of the

Northeast Zone regions by the elimination of a full-time AOR

position. Finally, Conte chose to retain DeMartino, then

fifty-eight years old (a year younger than LeBlanc), because

DeMartino had a longer tenure in Massachusetts and had a

claims adjusting background, not possessed by LeBlanc, that

provided Great American with greater versatility in the event

of hurricanes, storms, or floods.

The explanations for LeBlanc's discharge offered by

Conte fully satisfy Great American's burden of production

under the second prong of the McDonnell Douglas test. It has

presented, "`through the introduction of admissible

evidence,' reasons for its actions which, if believed by the

trier of fact, would support a finding that unlawful

discrimination was not the cause of the employment action."

St. Mary's Honor Ctr. v. Hicks, U.S. , 113 S. Ct. at

2747 (quoting Burdine, 450 U.S. at 254-55) (emphasis in

original). Accordingly, the presumption of age

discrimination raised by LeBlanc's prima facie case has

vanished. Left to be decided is whether the evidence, in its

entirety, would permit a reasonable factfinder to infer that

-24-

Great American's decision to terminate LeBlanc was inspired

by age animus.

4. LeBlanc's Evidence of Age Animus

LeBlanc points to two types of circumstantial

evidence as supporting an inference that Great American's

decision to terminate him was motivated by intentional age

discrimination. First, LeBlanc contends that the reasons

articulated by Great American for his dismissal could be

found to be mere pretexts offered to disguise the defendant's

age animus. Second, LeBlanc argues that certain statistical

evidence he presented suffices to show that Great American

was engaging in a pattern of discriminatory conduct towards

older employees.

a. Evidence of Pretext

LeBlanc submits that a layoff of only three

employees out of 212 salaried, exempt employees in the

Northeast Zone cannot be characterized as a bona fide

reduction in force.6 Moreover, he claims that Great

American did not engage in a reduction in force because it

hired ten new AORs in 1990 prior to his dismissal. We

conclude, however, that a reasonable factfinder could not

infer pretext or age discrimination from these circumstances.

6. Although LeBlanc fails to spell out the specific
characteristics of a reduction in force as he understands the
term, he insists that a true reduction in force occurs, for
instance, when 1,000 employees out of an employee population
of 5,500 are dismissed.

-25-

An employer need not dismiss any particular number

of employees, or terminate a set percentage of the work

force, to institute a reduction in force. Rather, "[a] work

force reduction situation occurs when business considerations

cause an employer to eliminate one or more positions within

the company." Barnes v. GenCorp Inc., 896 F.2d at 1465

(emphasis added). According to Al Conte, Great American's

corporate headquarters ordered him to submit a leaner budget

for the Northeast Zone for the upcoming year because it was

concerned about the region's financial difficulties. To

comply, Conte decided that it would be necessary to eliminate

five positions, two of which were unfilled at the time.

Under these circumstances, the fact that Conte laid off only

three employees, including LeBlanc, as part of his claimed

initiative to trim expenses does not by itself suggest that

the dismissals were mere pretexts rather than bona fide

reductions in force. Other evidence would be needed from

which to conclude that Great American's stated reasons were

mendacious.

Nor could a rational factfinder conclude that Great

American's purported reduction in force was a pretext for age

discrimination simply because it hired ten younger AORs

elsewhere in the Northeast Zone in the period before

discharging LeBlanc in October 1990. LeBlanc provides no

evidence that the hiring of younger AORs outside of eastern

-26-

Massachusetts was tied in any way to Great American's

decision to eliminate the older LeBlanc's position in eastern

Massachusetts; nothing suggests they were hired to assume

LeBlanc's responsibilities. LeBlanc submits that a

reasonable juror might conclude that a company as

sophisticated as Great American would not legitimately decide

to engage in a reduction in force shortly after adding ten

new positions. But to reach any such conclusion on this

record, a juror would have to indulge impermissibly in

unsupported speculation. See Medina-Munoz, 896 F.2d at 8.

One can imagine perfectly legitimate considerations for

increasing the number of AORs elsewhere in the region while

cutting back in eastern Massachusetts. It is not a court's

role "to second-guess the business decisions of an employer."

Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 31 (1st

Cir. 1990).

LeBlanc also claims that he was not dismissed

pursuant to a reduction in force because he was replaced by

Anne Daley. It is true that "[a]n employee is not eliminated

as part of a work force reduction when he or she is replaced

after his or her discharge." Barnes, 896 F.2d at 1457.

Nonetheless, Daley did not, in fact, replace LeBlanc. A

discharged employee "is not replaced when another employee

is assigned to perform the plaintiff's duties in addition to

other duties, or when the work is redistributed among other

-27-

existing employees already performing related work." Id.

Rather, "[a] person is replaced only when another employee is

hired or reassigned to perform the plaintiff's duties." Id.

Daley was not hired to perform LeBlanc's duties.

She began working for Great American in its Windsor,

Connecticut, office one month before LeBlanc was discharged,

and did not begin to service agents and brokers in eastern

Massachusetts until July 1991, approximately nine months

after LeBlanc's departure. Prior to then, she serviced

agents only in Connecticut and western Massachusetts. Even

in July 1991, and thereafter, Daley did not perform anything

like all of LeBlanc's former duties. Moreover, while

assigned to some (though not all) of LeBlanc's former agents

in eastern Massachusetts, she continued to service agents in

western Massachusetts. Thus, at most, her temporary

assignment included performing some of LeBlanc's prior

responsibilities while carrying on duties of her own never

performed by him. And even this partial performance of

LeBlanc's duties lasted for only three months. This did not

amount to replacing him.7

LeBlanc next disputes Great American's claim that

it was experiencing financial difficulties in the Northeast

Zone and in Massachusetts in 1990. LeBlanc opines that the

7. Since September 1991, when Daley resigned from Great
American, Charles DeMartino has been the only AOR in eastern
Massachusetts.

-28-

primary method for determining whether a particular state or

a branch office is profitable is by comparing what is

referred to as the total benchmark figure ("TBM") with the

total loss ratio ("TOT"). According to LeBlanc, when the TBM

figure exceeds the TOT figure, it reflects profitability.

LeBlanc asserts that Great American's Gross Accident Year

Analysis Report ("GAYAR") showed that, for the years 1987

through 1991, Massachusetts was the only state among the four

largest producing states in the Northeast Zone8 consistently

to have a TBM figure that exceeded its TOT figure.

The GAYAR, however, was only one of many records

kept by Great American that measured the company's

profitability in the Northeast Zone and in Massachusetts.

The Effective Accident Year Report for Massachusetts, for

instance, revealed that, in 1990, the TOT figure exceeded the

TBM figure fifty to forty-three.9 This was a strong

indication of unprofitability in Massachusetts. In addition,

the profit and loss statements for the various offices in the

Northeast Zone revealed that the region was experiencing

8. The other three states were New York, New Jersey, and
Connecticut.

9. The difference between the GAYAR and the Effective
Accident Year Report is that the former measured loss ratios
on a policy year/accident year basis while the latter
measured loss ratios on a calendar year basis. According to
Robert McGuigan, who was a vice-president for Great American
at the time of LeBlanc's discharge, executives would evaluate
the calendar year loss ratios, not the policy year/accident
year loss ratios, to assess profitability.

-29-

financial difficulties in 1990. For instance, the Lancaster

branch office, to which the eastern Massachusetts region

reported, showed a calendar year underwriting loss in 1990 of

approximately $3.7 million; the New Jersey profit center

reported a calendar year underwriting loss in 1990 of roughly

$4.5 million; and the New England profit center suffered a

calendar year underwriting loss in 1990 of approximately $3.8

million. All told, the Northeast Zone incurred a calendar

year underwriting loss in 1990 of $11.8 million.10

Given this evidence of substantial financial

difficulty, we can find no triable issue over Great

American's assertion that unprofitability concerns fueled its

decision to lay off LeBlanc and the others. The question for

a jury would not be whether Great American's finances, viewed

by one yardstick, might arguably be seen by someone else in a

more optimistic light than did its managers, but whether

there was evidence of profitable performance sufficient to

permit a reasonable jury to infer that Great American's

proffered pessimistic analysis given as a reason for the

layoffs was a mere pretense. Viewing all the financial

evidence together, including the GAYAR data, we think a jury

would lack any rational basis from this evidence to conclude

10. This loss appears to be particularly severe when
compared to the $111 thousand calendar year underwriting
profit that the Northeast Zone realized in 1989.

-30-

that Great American's assertions of financial concern, as a

basis for the discharges, were a sham.

Finally, LeBlanc argues that further evidence of

the pretextual nature of Great American's explanation for

terminating LeBlanc lies in the fact that Al Conte did not

consult with Bruce Rutherford, the branch manager of the

Lancaster office and the person to whom LeBlanc reported,

before he made the final decision to dismiss LeBlanc. In

addition, LeBlanc asserts that Joseph Klimas, the vice-

president in charge of personnel for the Northeast Zone, did

not learn about LeBlanc's impending dismissal until one week

before it was officially announced. Although Conte might

have been well served to consult these people before he

decided to discharge LeBlanc, we are not persuaded that this

evidence either undermines the justifications given by Great

American for its decision to dismiss LeBlanc or shows that

Great American or Conte was motivated by age animus. As we

stated in Mesnick v. General Electric Co., "Courts may not

sit as super personnel departments, assessing the merits or

even the rationality of employers' nondiscriminatory

business decisions." 950 F.2d at 825. LeBlanc points to

nothing in the record to suggest why Conte, who, in January

1989, approved LeBlanc's transfer, at Great American's

expense, to eastern Massachusetts and his corresponding

sixteen percent pay raise, would develop an aversion to older

-31-

people less than two years later, especially where he chose

to retain DeMartino, the other AOR in eastern Massachusetts,

who was only a year younger than the fifty-nine-year-old

LeBlanc. See Lowe v. J.B. Hunt Transp., Inc., 963 F.2d 173,

175 (8th Cir. 1992); Proud v. Stone, 945 F.2d 796, 797 (4th

Cir. 1991) ("[I]n cases where the hirer and the firer are the

same individual and the termination of employment occurs

within a relatively short time span following the hiring, a

strong inference exists that discrimination was not a

determining factor for the adverse action taken by the

employer."). We note that Conte, himself, was nearly sixty

years old when he decided to terminate LeBlanc and the

others.

b. Statistical Evidence

LeBlanc offers statistical evidence of Great

American's employment practices that he claims would allow a

reasonable trier of fact to infer that Great American's

decision to terminate him constituted an act of illegal age

discrimination. The district court, however, found

otherwise. It ruled that, in light of the totality of the

record, LeBlanc's statistical evidence was insufficient as a

matter of law to demonstrate that Great American wrongfully

considered age in its decision to dismiss LeBlanc. We agree

with the district court.

-32-

In a disparate treatment case such as

LeBlanc's,11 the central focus "is less whether a pattern

of discrimination existed [at the company] and more how a

particular individual was treated, and why." Cumpiano v.

Banco Santander P.R., 902 F.2d 148, 156 (1st Cir. 1990). As

such, statistical evidence of a company's general hiring

patterns, although relevant, carries less probative weight

than it does in a disparate impact case.12 See id.; Mack

v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 184 n.3 (1st Cir.

1989) (questioning how statistics showing a low percentage of

African Americans and women at A & P would have been

admissible in a disparate treatment case). In this context,

statistical evidence in a disparate treatment case, in and of

itself, rarely suffices to rebut an employer's legitimate,

nondiscriminatory rationale for its decision to dismiss an

individual employee. See Walther v. Lone Star Gas Co., 977

F.2d 161, 162 (5th Cir. 1992). This is because a company's

overall employment statistics will, in at least many cases,

have little direct bearing on the specific intentions of the

11. A "disparate treatment" cause of action accrues "when an
employer treats an employee less favorably than others
because of her race, color, religion, sex, [] national
origin," or age. Cumpiano v. Banco Santander P.R., 902 F.2d

148, 156 (1st Cir. 1990).

12. Disparate impact actions arise "from employment
practices, often facially neutral, which (1) cannot be
justified by business necessity and (2) in fact impose
harsher burdens on employees who share a protected
characteristic." Cumpiano, 902 F.2d at 156.

-33-

employer when dismissing a particular individual. Gadson v.

Concord Hosp., 966 F.2d 32, 35 (1st Cir. 1992). "Without an

indication of a connection between the statistics," the

practices of the employer, and the employee's case,

statistics alone are likely to be inadequate to show that the

employer's decision to discharge the employee was

impermissibly based on age. Id.

In the instant case, we do not think that LeBlanc's

statistical evidence would allow a reasonable trier of fact

to infer that Great American engaged in illegal age

discrimination against LeBlanc. The statistics themselves

are of questionable import, and they stand precariously

unsupported by other probative evidence of age

discrimination. There is, moreover, no evidence whatsoever

to connect the statistics to Great American's specific

decision to dismiss LeBlanc.

The flaws in the statistical evidence itself are

notable. First, the comparison of LeBlanc's age with the

distribution of ages in various groups of AORs in the

Northeast Zone from 1989 through 1991 fails to provide

important information regarding the pool of applicants. We

are not told whether "qualified older employees were

available or applied for those jobs." Simpson v. Midland-

Ross Corp., 823 F.2d 937, 943 (6th Cir. 1987). Indeed, the

fact that recently hired AORs are younger than LeBlanc is not

-34-

necessarily evidence of discriminatory intent, but may simply

reflect a younger available work force.

Second, LeBlanc's statistics that compare the ages

of the employees who left Great American for any reason from

1989 through 1991 with the ages of Great American employees

who kept their jobs during the period fail to distinguish

voluntary from involuntary departures. Voluntary departures

obviously have no bearing on whether Great American engaged

in age discrimination. See id. (improper to include "all who

left the company during the relevant period even though they

might have retired . . . or accepted jobs elsewhere"). In

addition, of the twenty-two people who left Great American

either voluntarily or involuntarily during the three-year

period, seventeen left in 1991, the year following LeBlanc's

dismissal. Significantly, the average age of those seventeen

people was actually younger than the average age of the

employees who stayed with Great American.13 We cannot see

how the data from 1991 demonstrate any pattern of age

discrimination whatsoever. Accordingly, if we disregard the

data from 1991, LeBlanc's statistics are based on the

departure of only five employees, including LeBlanc, over two

13. Even when the 1990 hires and the trainees, who are
presumably younger in age than other employees, are excluded
from the employee pool during the three-year period, the
statistical comparisons between jobs that were eliminated and
jobs that were not eliminated in 1991 do not raise an
inference of age discrimination.

-35-

years from an average annual employee population in the

Northeast Zone of approximately 215 people. "[S]uch a small

statistical sample carries little or no probative force to

show discrimination." Fallis v. Kerr-McGee Corp., 944 F.2d

743, 746 (10th Cir. 1991); see Simpson v. Midland-Ross Corp.,

823 F.2d 937, 943 (6th Cir. 1987); Sengupta v. Morrison-

Knudsen Co., 804 F.2d 1072, 1075-76 (9th Cir. 1986); Coates

v. Johnson & Johnson, 756 F.2d 524, 541 (7th Cir. 1985);

Haskell v. Kaman Corp., 743 F.2d 113, 121 (2d Cir. 1984). We

conclude that LeBlanc's statistical evidence does not provide

a sufficient basis for a reasonable jury to find that Great

American terminated LeBlanc because of his age.

IV.

CONCLUSION

On the record before us, we find that LeBlanc has

adduced insufficient evidence for a reasonable trier of fact

to infer that Great American's decision to terminate his

employment in October 1990 was motivated by age animus. In

other words, "[t]he evidence presented by [LeBlanc], viewed

in the light most favorable to him, [fails] to create a

genuine issue of material fact as to whether `but for his

employer's motive to discriminate against him because of his

age, [LeBlanc] would not have been discharged.'" Menard v.

First Sec. Servs. Corp., 848 F.2d 281, 289 (1st Cir. 1988)

(quoting Loeb v. Textron, Inc., 600 F.2d 1003, 1019 (1st Cir.

-36-

1979)). Indeed, LeBlanc's arguments are based largely upon

conclusory allegations, improbable inferences, and

unsupported speculation. The district court's decision to

enter summary judgment in Great American's favor was proper.

Affirmed. Costs to appellees.

-37-