**Sidney R. LAWRENCE,**
**Plaintiff, Appellant,**

v.

**NORTHROP CORPORATION,**
**Defendant, Appellee.**

No. 92–1702.

United States Court of Appeals,
First Circuit.

Heard Oct. 8, 1992.
Decided Nov. 25, 1992.

Paul A. Manoff, Boston, Mass., for appellant.

Joseph D. Regan with whom Donahue & Donahue, Lowell, Mass., was on brief, for appellee.

Before BREYER, Chief Judge, BROWN,* Senior Circuit Judge, and STAHL, Circuit Judge.

* Of the Fifth Circuit, sitting by designation.

STAHL, Circuit Judge.

On September 2, 1988, defendant-appellee Northrop Corporation ("Northrop") terminated the employment of plaintiff-appellant Sidney R. Lawrence ("Lawrence"). Believing that his discharge stemmed from impermissible age discrimination, Lawrence sued Northrop under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634 (1985 & Supp.1992). The district court entered summary judgment in Northrop's favor. We affirm.

## I.

### STATE OF THE RECORD

As an initial matter, we note that Lawrence's counsel, in opposing Northrop's summary judgment motion and in framing the instant appeal, has presented both the district court and this panel with factual allegations and legal theories that bear little, if any, resemblance to those found in the complaint. In addition, as support for the new allegations and theories, counsel has submitted, without any appreciable attempt at useful elaboration, a cornucopia of disjointed deposition excerpts and unexplained discovery documents. Given such a record, any attempt to set forth the facts underpinning Lawrence's various allegations, without context, would be an Augean labor. Accordingly, we find it more worthwhile to begin by reciting the relevant legal norms, and then to use our recitation as a lens through which to focus Lawrence's somewhat clouded presentation.

## II.

### LAW TO BE APPLIED

#### A. Summary Judgment

Summary judgment operates "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Medicine*, 976 F.2d 791, 794 (1st Cir.1992). It is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

The moving party bears the initial burden of "averring 'an absence of evidence to support the nonmoving party's case.'" *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990) (quoting *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554). That burden having been met, the nonmoving party "may not rest upon mere allegation or denials of his[/her] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) (citing Fed.R.Civ.P. 56(e)). In so doing, the nonmovant "must present *affirmative evidence* in order to defeat a properly supported motion for summary judgment." *Id.* at 257, 106 S.Ct. at 2515 (emphasis supplied). In conducting our analysis, however, we read the record "in the light most amiable to the nonmovant[ ] and indulge all reasonable inferences favorable to [him/her]." *Garside*, 895 F.2d at 48.

■ Our review of a summary judgment ruling is plenary. *Id.* Moreover, we are not limited to the district court's reasoning. Instead, we may "'affirm the entry of summary judgment on any independently sufficient ground made manifest by the record.'" *Quintero v. Aponte–Roque*, 974 F.2d 226, 228 (1st Cir.1992) (quoting *United States v. One Parcel of Real Property*, 960 F.2d 200, 204 (1st Cir.1992)).

#### B. The ADEA

■ When, as here, a plaintiff produces no direct evidence of age discrimination, the case is analyzed under the now-familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973). *See, e.g., Biggins v. Hazen Paper Co.*, 953 F.2d 1405, 1409 (1st Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 3035, 120 L.Ed.2d 904 (1992); *Mesnick v. General Elec. Co.*, 950 F.2d 816, 823 (1st Cir.1991), *cert. de-*

nied, —— U.S. ——, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). Plaintiff first must make a prima facie showing of discrimination. *Biggins,* 953 F.2d at 1409; *Mesnick,* 950 F.2d at 823. In a case where plaintiff was replaced by another worker, this requires a demonstration that (1) plaintiff was at least forty years of age, (2) plaintiff's work was sufficient to meet his/her employer's legitimate expectations, and (3) plaintiff was replaced by someone with roughly similar qualifications. *Connell v. Bank of Boston,* 924 F.2d 1169, 1172 (1st Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2828, 115 L.Ed.2d 997 (1991); *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990). In a situation where there has been a reduction in force, we have suggested that, as an alternative to showing replacement by a similarly qualified person, a plaintiff may establish a prima facie case by showing that " 'the employer did not treat age neutrally or that younger persons were retained in the same position.' " *Connell,* 924 F.2d at 1173 n. 5 (quoting *Hebert v. Mohawk Rubber Co.,* 872 F.2d 1104, 1111 (1st Cir.1989)). If made, the prima facie case gives rise to an inference that the employer discriminated on the basis of plaintiff's age. *Mesnick,* 950 F.2d at 823.

■■■ Once the prima facie case is established, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for the employee's termination. *Biggins,* 953 F.2d at 1409; *Mesnick,* 950 F.2d at 823. The employer's burden at this stage is merely one of production; the burden of persuasion remains plaintiff's at all times. *Mesnick,* 950 F.2d at 823 (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)). If a nondiscriminatory reason is set forth, the inference raised by the prima facie case disappears and the burden shifts back to plaintiff. *Id.*

■■■ At the third and final stage of the *McDonnell Douglas* framework, plaintiff must show that the nondiscriminatory reason advanced by the employer is a pretext for age discrimination. *Id.; see also Connell,* 924 F.2d at 1172. It is not enough for plaintiff merely to cast doubt upon the employer's justification. *Mesnick,* 950 F.2d at 824; *Villanueva v. Wellesley College,* 930 F.2d 124, 127–28 (1st Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 181, 116 L.Ed.2d 143 (1991). Rather, this circuit has construed Fed.R.Civ.P. 56's requirement that a party opposing a motion for summary judgment demonstrate the existence of at least one *material* factual dispute as mandating that the non-moving party point to evidence which could raise an inference of a discriminatory motive underlying the pretextual explanation. *See Villanueva,* 930 F.2d at 128; *see also Mesnick,* 950 F.2d at 824–25. Proof of such a motive need not be direct. *Mesnick,* 950 F.2d at 824; *Connell,* 924 F.2d at 1172 n. 3.[1] "Rather, the evidence as a whole,

---

1. In elaborating upon what a non-moving plaintiff minimally must prove in order to elude summary judgment at stage three of the *McDonnell Douglas* rubric, we have stated: "There is no absolute rule that a discrimination plaintiff *must* adduce evidence in addition to that comprising the prima facie case and the rebuttal of defendant's justification in order to prevail either at the summary judgment stage or at trial." *Villanueva,* 930 F.2d at 128 (emphasis in original). We also have asserted: "[I]n some factual settings, the mere showing of the falsity of the employer's stated reasons may, along with other facts and circumstances in the case, give rise to a reasonable inference of age discrimination." *Connell,* 924 F.2d at 1175. These statements cannot be read as suggesting that, in some instances, a plaintiff may be allowed to proceed to trial where the record is devoid of either direct or indirect evidence of discriminatory animus on the employer's part.

In this circuit, it is settled that a plaintiff cannot avoid summary judgment unless the record contains minimally sufficient evidence, direct or indirect, both of pretext *and* of the employer's discriminatory animus. *Mesnick,* 950 F.2d at 825; *Villanueva,* 930 F.2d at 127; *Connell,* 924 F.2d at 1172; *Medina–Munoz,* 896 F.2d at 9; *see also Olivera v. Nestle Puerto Rico, Inc.,* 922 F.2d 43, 48 (1st Cir.1990) ("In addition to making out a prima facie case, a plaintiff has the burden not only of proving that the articulated reasons of the employer were pretextual but also of adducing additional evidence that the articulated reasons were a pretext for age discrimination."); *but see Connell,* 924 F.2d at 1181 (Torres, J., concurring) (arguing that if a plaintiff has successfully demonstrated a triable issue with regard to pretext, the inference of discrimination raised by the prima facie case should be reinstated and, in the absence of uncontradicted evidence that the employer was motivated by

whether direct or indirect, must be sufficient for a reasonable factfinder to infer that the employer's decision was motivated by age animus." *Connell,* 924 F.2d 1172 n. 3. It is against this backdrop that we evaluate Lawrence's assertions.

## III.

## BACKGROUND

### A. A Brief History

In October 1985, Lawrence joined Northrop's Defense Systems Division in Rolling Meadows, Illinois. At the time of his hiring, Lawrence was fifty-two years old. He was hired on a "skills-needed" basis.

By mid-1988, Northrop was experiencing severe economic stress and was in the process of significantly reducing its workforce.[2] During this period, Lawrence was employed as an associate program manager and was working on a defense project for the Canadian government. Lawrence contends that he was working forty-seven hour weeks throughout 1988. Northrop concedes that Lawrence's employment performance, at all relevant times, met expectations.

On September 2, 1988, Lawrence received an unsigned notice advising him that he was being placed on layoff, effective immediately. The notice indicated that the layoff was precipitated by business conditions necessitating a reduction in work force. That same day, an internal Northrop memorandum entitled "Justification for Organization Lay-Off Selection" was sent to file.[3] The memorandum stated: "Mr. Lawrence's selection for lay-off from

Organization 4000 is based upon the fact that his relative ranking in performance amongst his peers was the lowest in Organization 4000." Lawrence was fifty-five years old at the time of his termination.

On January 26, 1989, Lawrence filed with the Equal Employment Opportunity Commission ("EEOC") an affidavit charging that his termination was the result of age discrimination. The EEOC conducted an investigation and, on November 28, 1989, issued its determination that no violation of the ADEA had occurred. This determination was upheld on review, and Lawrence's charge was dismissed. On August 22, 1990, Lawrence instituted the instant proceedings by filing his complaint in district court.

### B. Lawrence's Allegations

Lawrence's complaint is premised upon the theory that his termination was a manifestation of a scheme on the part of Northrop to replace its older workers with younger workers. In relevant part, the complaint asserts:

5. On information and belief, sometime in 1988, prior to September, Northrop determined to reduce its work force and devised a lay-off program which was not age-neutral but was intended to rid Northrop of its older workers. On information and belief, an element of the lay-off program was the discharge of both young and old workers and the subsequent rehiring of the best of the young workers.

6. In August, 1988, there were 4 employees in Program Management, including Robert Eisenberg (Program Director,

---

some other nondiscriminatory reason, the case should proceed to trial); *id.* at 1182–85 (Bownes, J., dissenting) (arguing that if plaintiff makes out a prima facie case and successfully rebuts as pretextual the employer's proffered explanation, s/he should be allowed to proceed to trial). Thus, the aforementioned statements should only be read as indicating that where, by whatever means, the record contains evidence sufficient for a fact-finder to infer discriminatory animus on the part of an employer, plaintiff need only make out a prima facie case and rebut as pretextual the employer's justification in order to defeat a summary judgment motion.

**2.** The record reflects that between 1986 and July 1988, just prior to Lawrence's layoff, Northrop had reduced its workforce from approximately 5,500 workers to approximately 4,500 workers. The record further reflects that, at the time of Lawrence's discharge, twenty-one other employees were either terminated or transferred out of Lawrence's department.

**3.** The record does not indicate whether the memorandum was placed in Lawrence's personnel file or in a general Northrop file.

about age 43), Frank D'Alexander (Program Manager, about age 37), Glenn Grotefeld (Associate Program Manager, about age 30), and Lawrence (Associate Program Manager, age 55). The time of all 4 employees was fully involved.

7. On or about September 1, 1988, Robert Eisenberg notified Lawrence that he was to be laid off effective the following day. On September 2, 1988, written confirmation of the layoff was given to Lawrence....

8. At the same time as Northrop discharged Lawrence, it also discharged the other younger Associate Program Manager, Glenn Grotefeld. However, within two weeks, Northrop attempted to rehire Grotefeld. On information and belief, the "discharge" of Grotefeld was never intended to be permanent but was solely intended to obscure the fact that the layoff was directed at older employees. When Grotefeld refused employment because he had found a better job, Northrop assigned an employee named Michael Werwath, about age 32, to replace Grotefeld.

9. Within days of discharging Lawrence, Northrop reassigned an employee named Stanley Piech, about age 37, to replace Lawrence as Associate Program Manager on the Canadian project. On information and belief, Stanley Piech had already been selected to replace Lawrence at the time of Lawrence's discharge. On information and belief, Northrop's selection of Stanley Piech to replace Lawrence was principally based on his age.

Northrop filed an answer denying each of these allegations and asserting that Lawrence was terminated as part of a general reduction in force in accordance with appropriate employee evaluation procedures. Following the close of discovery, Northrop filed a motion for summary judgment, reiterating its position that Lawrence was terminated as part of a reduction in force because he had the lowest performance rating among his peers and because his skills were no longer needed. Northrop's motion further asserted that the allegations set forth in Lawrence's complaint were insufficiently supported to forestall the proper entry of summary judgment in its favor.

Lawrence responded to the motion like the Hydra to a sword. Apparently submitting to the decapitation of the contentions animating his complaint, Lawrence, in his opposition memorandum, made no mention either of Northrop's alleged plan to fire and then rehire its young workers or of Glenn Grotefeld. Further, though continuing to protest generally Northrop's eventual reassignment of Stanley Piech to the Canadian project, Lawrence made no real attempt to demonstrate how such reassignment might have run afoul of the ADEA. Instead, Lawrence relied primarily on two freshly-spawned theories, asserting that there existed sufficient evidence for a trial on whether his low performance rating had been (1) arrived at, or (2) interpreted in a discriminatory manner. Specifically, Lawrence alleged that he was dismissed on the basis of a performance rating which had been downgraded, or "leveled," from a 4.0 to a 3.0 (out of 6.0), while both a younger associate program manager with a non-leveled performance rating of 3.97, Sheryl DeStefano, and a younger program manager who had never been evaluated, Mr. Dahlstrom,[4] were retained.[5] Lawrence also made passing reference to certain documents obtained during discovery which, in his view, showed that he was "targeted" for layoff at a time when he did not have the lowest performance rating among his peers. In conjunction with his opposition memorandum, Lawrence submitted several deposition excerpts and unexplained discovery documents.

The district court entered summary judgment in Northrop's favor. After a herculean effort at summarizing Lawrence's evi-

4. The record does not reveal Mr. Dahlstrom's first name.

5. The record reflects that from May through September of 1988, Northrop ordered that the performance ratings of employees in Lawrence's division be leveled so as to reflect the division's poor overall performance.

dence and assertions, the court found that Lawrence had met his prima facie burden at stage one of the *McDonnell Douglas* framework by demonstrating that at least one younger associate program manager was retained at the time he was laid off. The court then determined that Northrop had met its stage two burden of articulating a nondiscriminatory reason for Lawrence's discharge. Finally, without specifically stating whether Lawrence had made a sufficient showing to raise the question of pretext, the court ruled that, at stage three of the burden-shifting analysis, Lawrence had not presented sufficient evidence for a reasonable trier of fact to infer that the decision to fire him was motivated by age animus.

On appeal, Lawrence challenges the district court's view of the evidence at stage three. In so doing, Lawrence points to three things which he believes support an inference of age discrimination and warrant a trial: (1) the retention of DeStefano and Dahlstrom; (2) the documents which purportedly show that he was targeted for layoff at a time when he did not have the lowest performance rating among his peers; and (3) his eventual replacement with the younger Stanley Piech. We discuss each in turn.

## IV.

## DISCUSSION

### A. The Retention of DeStefano and Dahlstrom

 In support of his claim of discrimination, Lawrence first alleges that Northrop leveled his performance rating from a 4.0 to a 3.0 and then dismissed him while retaining DeStefano, who had a non-leveled performance rating of 3.97. If true in its entirety, this allegation might give us pause. However, the record does not support Lawrence's contention about DeStefano's performance rating.

Simply put, Lawrence does not indicate, nor can we locate, any record evidence demonstrating that DeStefano had an unleveled performance rating of 3.97. DeStefano's performance appraisal only states that she "meets requirements very well." It does not contain a numerical rating. Moreover, none of the submitted deposition excerpts bolsters Lawrence's claim.[6] As such, the retention of DeStefano at the time of Lawrence's discharge cannot be viewed as raising an inference of age discrimination.[7]

Lawrence's allegation that the retention of program manager Dahlstrom constitutes evidence of age animus does not require extended discussion. As noted above, where, as here, a plaintiff fails to show that the employer did not treat age neutrally in reducing its work force, a prima facie case is established only where a plaintiff demonstrates "that younger persons were retained *in the same position.*" *Connell*, 924 F.2d at 1173 n. 5 (quoting *Hebert*, 872 F.2d at 1111) (emphasis added). The record reflects that Lawrence was an associate program manager, and not a program manager, at the time of his termination.[8] Accordingly, the retention of Dahlstrom as program manager, in the context of the other evidence in this case, is not significantly probative on the question of whether

---

6. Indeed, the only place in the record where the number 3.97 appears is when, in the course of deposing a Northrop employee, Lawrence's counsel seems to state that the DeStefano appraisal contains a rating of 3.97. As noted above, however, the appraisal contains no such rating.

7. Even were we to accept Lawrence's contention that DeStefano did have a non-leveled rating of 3.97, it does not seem that this fact would help Lawrence's cause. Although Lawrence's performance appraisal contains a rating of 4.0 crossed out by the letter "X" and replaced with a 3.0,

followed by a notation explaining that the change was made pursuant to the leveling policy, it looks as though Lawrence's rating was rounded up to a 4.0. The raw score next to the box containing the rating is 127/32, which equals 3.968. Thus, it appears that Lawrence's actual non-leveled rating, when carried out the relevant number of decimal places, is less than 3.97.

8. Lawrence has not alleged, nor does the record suggest, that the positions of associate program manager and program manager were, in essence, the same.

the dismissal of Lawrence violated the ADEA.

### B. The Targeting Documents

Lawrence's second argument, generously construed, is that certain documents in the record reveal that he was targeted for layoff at a time when he did not have the lowest performance rating among his peers.[9] The record contains an April 21, 1988, memorandum listing the names of eleven employees who are described as "available for reassignment and/or layoff." Lawrence's name appears on that list. The record also includes two undated documents that appear to have been prepared by Northrop in order to assess its possible liability in discrimination suits ("the liability documents"). At oral argument, Lawrence's counsel represented, without substantiation, that the undated documents must have been prepared after the April 21, 1988, memorandum but before Lawrence's May 1988 evaluation.[10] The first of the two documents bears the following notation next to Lawrence's name:

—age liability as does not have lowest rated performance when compared with other's [sic] in job title in unit or in [Organization] 4000. Some reviews are leveled and some are not leveled. Of seven Prog. Mgr. Assoc. in 4000, the three oldest are targeted for layoff.

The second document also contains remarks next to Lawrence's name:

—Age 54 yrs. old.

—Does not have lowest review in unit.

—Three individuals in unit, not affected, hold lower ratings of 3.2, 3.3, and 3.4.

Lawrence's argument on the basis of these documents has some surface appeal. Closer scrutiny, however, reveals that it begs the question. We first note that Lawrence does not argue that employees listed on the April 21, 1988, memorandum were targeted on the basis of their performance ratings. However, even if we assume *arguendo* that this was the case, and even if we assume that the liability documents were created in response to the April 21, 1988, memorandum, and even if we accept that they reflect that Lawrence indeed was targeted for layoff at a time when he did not have the lowest performance evaluation among his peers, such facts do not tend to prove age discrimination on Northrop's part. Lawrence does not allege, nor does the record indicate, that, at the time these documents were created, at least one younger *associate program manager* with an identical or lower performance rating than Lawrence was *not* targeted for layoff.[11] Put another way, Lawrence has neither alleged nor demonstrated that there existed at least one younger associate program manager with an identical or lesser performance rating whose name did not appear on the April 21, 1988, memorandum.[12] As we stated above, it is the plaintiff's burden at stage three of the *McDonnell Douglas* framework to present sufficient evidence for a rational factfinder to infer discriminatory animus on the part of the employer. *See Mesnick*, 950 F.2d at 823. Without more, Lawrence's contention that he was targeted for layoff at a time

9. Indeed, Lawrence's brief makes such a cursory reference to these documents that a strong case could be made that Lawrence has waived the issues raised by them. *See Elgabri v. Lekas*, 964 F.2d 1255, 1261 (1st Cir.1992) ("'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.), *cert. denied*, 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990)). Although it is a close question, we feel that Lawrence has done just enough to preserve his argument. Accordingly, we address its merits.

10. Apparently, the second of the two documents was prepared prior to Lawrence's May 1988,

evaluation, as it notes his most recent review as having taken place in May 1987. Moreover, both documents appear to have been prepared after December 1987, as each contains references to evaluations performed in that month.

11. The fact that three individuals *in his unit* may have had lower ratings does not undermine this point.

12. The record reflects that Lawrence was afforded full discovery rights and provided with access to the documentation that should, through diligent investigation, have revealed the existence of any such person.

when he did not have the lowest performance rating among his peers is insufficient to meet this burden.[13]

### C. The Replacement of Lawrence with Piech

Finally, Lawrence argues that Northrop's decision to "replace" him with the younger Piech was discriminatory. Leaving aside the question of whether this replacement ever took place, we note that Lawrence does not allege, let alone demonstrate, that Piech possessed qualifications roughly similar to his own.[14] Such a demonstration is, however, part of the prima facie showing a discrimination plaintiff must make when alleging that his/her replacement violated the ADEA. *See Connell*, 924 F.2d at 1172. Thus, in the context of this case, we do not view Northrop's alleged replacement of Lawrence with Piech as significantly probative of age bias.

### V.

### CONCLUSION

In sum, we do not find persuasive Lawrence's assertion that there exists sufficient evidence in this record for a reasonable factfinder to infer that Northrop's decision to discharge him was motivated by age discrimination. Accordingly, we agree with the district court that Lawrence failed to carry his burden at step three of the *McDonnell Douglas* burden-shifting framework, and rule that summary judgment properly was entered in Northrop's favor.

*Affirmed. Costs to appellee.*

---

13. Nor can the fact that the three oldest associate program managers in Organization 4000 were targeted for layoff itself be viewed as giving rise to an inference of age discrimination. Northrop was in the midst of a significant force reduction by mid–1988. Indeed, twenty-one people from Lawrence's department were either terminated or transferred at the time of the September 2, 1988, layoff. In the face of such sweeping and comprehensive personnel changes, and where there has been no allegation or demonstration that at least one younger and identically or lower rated associate program manager was not targeted for layoff, we simply do not view the aforementioned targeting as being so inherently suspicious as to mandate a trial.

14. We further note that the record indicates that Piech's qualifications were superior to those of Lawrence.