**John TEAHAN, Plaintiff–Appellant,**

v.

**METRO–NORTH COMMUTER RAILROAD COMPANY, Defendant–Appellee.**

No. 95–7123.

United States Court of Appeals, Second Circuit.

Argued Sept. 22, 1995.

Decided March 26, 1996.

Patrick M. Wall, New York, New York (Graham Campaign & McCarthy, New York, New York, of counsel), for Plaintiff-Appellant.

Carol S. Barnett, New York, New York (William G. Ballaine, Siff Rosen P.C., New York, New York, Richard K. Bernard, General Counsel, Metro–North Commuter Railroad Company, New York, New York, of counsel), for Defendant-Appellee.

Before OAKES, MINER, and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Plaintiff-appellant John Teahan appeals from a judgment entered December 27, 1994 in the United States District Court for the Southern District of New York, Bernard Newman, *Judge of the United States Court of International Trade,* sitting by designation, that dismissed Teahan's complaint following a bench trial on remand from this Court's decision in *Teahan v. Metro–North Commuter Railroad Co.,* 951 F.2d 511 (2d Cir.1991), *cert. denied,* 506 U.S. 815, 113 S.Ct. 54, 121 L.Ed.2d 24 (1992) (*"Teahan I "*). The district court ruled that Teahan had failed to establish a violation by defendant-appellee Metro–North Commuter Railroad Company ("Metro–North") of Teahan's rights under § 504 of the Rehabilitation Act of 1973, as amended (the "Act"), 29 U.S.C. § 794(a).[1] *Teahan v. Metro–North Commuter R.R.,* No. 88 CIV. 5376(BN), 1994 WL 719720 (S.D.N.Y. Dec.27, 1994) (*"Teahan II "*).[2]

Teahan was formerly employed by Metro–North as a telephone and telegraph maintenance person. He had a long history of absenteeism in that occupation, which he attributed to a substance abuse problem that he claimed to have surmounted. *Teahan I* reversed an award of summary judgment to Metro–North, agreeing with Teahan's contention "that because the ground upon which he was terminated was his excessive absenteeism, and since his absenteeism was 'caused by' his substance abuse problem, the district court improperly shifted the burden to him to present evidence of pretext." 951 F.2d at 514. On remand, the district court ruled that Teahan "ha[d] failed to prove a prima facie case of handicap discrimination under § 504 since he ha[d] failed to establish the critical requirement of being 'otherwise qualified' to perform the job in question." *Teahan II,* 1994 WL 719720 at *11.

We affirm the judgment of the district court.

## Background

Familiarity with the factual recitations set forth in *Teahan I,* 951 F.2d at 513–14, and *Teahan II,* 1994 WL 719720 at *3–7, is assumed. In summary, Teahan was employed by Metro–North from January 1, 1983 until April 11, 1988. He was a substance abuser (as to drugs and alcohol) throughout this period until late December 1987. He incurred nineteen days of absence from his job in 1984, forty-seven days in 1985, fifty-eight

---

1. Section 794(a) provides in pertinent part:

   No otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

2. The district court also ruled adversely to Teahan on a personal injury claim that he ·had brought against Metro–North pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq. Teahan II,* 1994 WL 719720 at *12. Teahan does not appeal that ruling.

days in 1986, and fifty-three days in 1987. As a telephone and telegraph maintainer, Teahan was responsible for maintaining in operative condition at all times railroad communications for control of trains and power, and for police and emergency transmissions.

From 1983 through 1987, Metro–North imposed progressively more severe disciplinary measures upon Teahan for his excessive absenteeism, including warning letters and suspensions. He voluntarily participated in a thirty-day inpatient drug and alcohol rehabilitation program in March–April 1986. Teahan was absent from work thirteen days in November 1987, and four days in December 1987. He once again entered an inpatient rehabilitation program on December 28, 1987, having previously sought the assistance of Metro–North's employee assistance program for his substance abuse problem on December 14, 1987. Teahan discontinued his use of alcohol and illegal drugs shortly before entering the rehabilitation program, and completed the program successfully. There is no evidence that he ever thereafter resumed substance abuse.

On December 28, 1987, Metro–North mailed to Teahan a notice of charges and intent to discharge him for excessive absenteeism. After completing the rehabilitation program, Teahan returned to work on February 3, 1988. A disciplinary hearing was held in March 1988, and John H. Smith, Teahan's supervisor, discharged him on April 11, 1988 for excessive absenteeism. Smith's decision was subsequently affirmed by a special board of adjustment.

Teahan then commenced this action, and the district court, Mary Johnson Lowe, *Judge*, granted Metro–North's motion for summary judgment, ruling that Teahan was not terminated "solely by reason of" the handicap of drug and alcohol addiction within the meaning of § 794(a), *see supra* note 1, but rather by reason of excessive absenteeism. *See Teahan I,* 951 F.2d at 514. We reversed and remanded on appeal, *id.* at 521, concluding that "an employer 'relies' on a handicap when it justifies termination based

on conduct caused by the handicap." *Id.* at 516. We noted, however, that "[t]he conduct associated with or which is a manifestation of a handicap is quite relevant, *as distinct from the handicap itself,* in assessing whether a worker is 'otherwise qualified' [within the meaning of § 794(a), *see supra* note 1], and therefore, whether the termination was justified." 951 F.2d at 517.

On remand, the district court conducted a bench trial, made factual findings consistent with the recital earlier in this opinion, and stated that:

> In order to make out a *prima facie* case based on a violation of § 504 a plaintiff must prove: (1) that he is a "handicapped person" under the Act; (2) that he is "otherwise qualified" for the position sought; (3) that he is being excluded from the position sought solely by reason of his handicap; and (4) that the position exists as part of a program or activity receiving Federal financial assistance. *Doe v. New York University,* 666 F.2d 761 (2d Cir. 1981). The last of these elements is not in dispute here, and the present case turns on resolution of the first three elements.

*Teahan II,* 1994 WL 719720 at *7.

The court next determined that in view of "Teahan's severe and long-standing substance abuse problem, which was the sole cause of excessive absenteeism from his job," Teahan was an "individual with handicaps" within the meaning of the Act.[3] *Id.* (citing *Teahan I,* 951 F.2d at 517).

In assessing whether Teahan was dismissed "solely by reason of" his handicap, the district court was guided by *Teahan I,* 951 F.2d at 515–17, which specifically addressed that issue. The district court found that "[o]n neither December 28, 1987, when Smith decided to dismiss Teahan, nor on February 3, 1988, when Metro–North returned Teahan to his safety-sensitive job after passing a medical examination (including a drug screen), did Metro–North actually believe that Teahan was using illegal drugs and/or alcohol." *Teahan II,* 1994 WL 719720

---

**3.** The term "individual with handicaps" in § 504(a) was subsequently amended to "individual with a disability." *See* Rehabilitation Act Amendments of 1992, Pub.L. No. 102–569, § 102(p)(32), 106 Stat. 4344, 4360.

at *7. The Court also found specifically that Smith, "who made the decision to discharge [Teahan] in late December 1987[,] was not even aware at that point in time that Teahan was a substance abuser." *Id.* at *6.

The court recognized, however, that

[a]n employee's termination is deemed to be 'solely by reason of' his handicap within the purview of the Act even though the employer disclaims any reliance on the handicap *per se* and the employer claims that it relied on the conduct itself [in this case, excessive absenteeism] if the latter was caused by or was a job-related manifestation of the handicap.

*Id.* at *8. The district court found that "Teahan's excessive absenteeism was caused by his alcohol and drug abuse," *id.* at *4, and accordingly concluded that Teahan "was discharged 'solely by reason of' his handicap," *id.* at *7 (quoting § 794(a), *supra* note 1).

The district court then turned to whether Teahan was "otherwise qualified" for his position within the meaning of § 794(a), *see supra* note 1, opining that "[t]he crucial question to be resolved in determining whether Teahan was 'otherwise qualified' under the Act is the 'substantiality of the risk' of relapse to substance abuse and excessive absenteeism based on an assessment of the risk factors as presented on the date of [Teahan's] discharge." 1994 WL 719720 at *9 (quoting *Doe,* 666 F.2d at 777).

To resolve this issue, the district court heard the testimony of two psychiatric experts on the likelihood that Teahan would relapse into drug or alcohol abuse. The district court found that this testimony

establishe[d] that at the time of discharge, April 11, 1988, there was a significant potential, indeed a likelihood, of relapse based on the expert's personal experience with similar cases, Teahan's history of severe substance abuse, prior relapse following the 30-day rehabilitation program at Parkview Hospital [in March–April 1986], adherence to substance abuse despite progressively severe disciplinary measures and risk of job loss, psychiatric profile (*i.e.,* anti-social personality traits), and other considerations.

*Id.* at *6. Teahan did not rebut this testimony or offer competing evidence on the issue of likelihood of relapse. *Id.* at *7. The court accordingly concluded that Teahan had failed to establish that he was "otherwise qualified" to perform his job at Metro–North, *id.* at *11, and rendered judgment for Metro–North dismissing Teahan's complaint, *id.* at *13.

Teahan then brought this appeal.

## Discussion

Teahan asserts two arguments on appeal with respect to the "otherwise qualified" prong of his § 504 claim. First, he contends that Metro–North held no reasonable belief that Teahan was likely to relapse into excessive absenteeism resulting from substance abuse because Smith, the Metro–North official responsible for Teahan's dismissal, did not believe that Teahan had a substance abuse problem. Juxtaposing this asserted disbelief with the district court's finding that Teahan's excessive absenteeism did in fact result from his substance abuse, Teahan claims to have established a violation of the Act because in view of its disbelief that Teahan was prone to substance abuse, Metro–North could not have made a "reasoned decision" whether a recurrence of substance abuse (and resulting absenteeism) was likely. Second, Teahan argues that the expert testimony on the likelihood that he would relapse into substance abuse should not have been considered by the district court because it was based almost exclusively upon "after-acquired evidence" that is barred by the Supreme Court's decision in *McKennon v. Nashville Banner Publishing Co.,* —— U.S. ——, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). We address these contentions in turn.

### A. *The Likelihood of Recurrence.*

The test for evaluating whether a plaintiff is otherwise qualified under § 794(a) for his position is well settled. "An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap." *Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979). This Court has further described an "otherwise

qualified" individual as one who "is able to perform the essential functions of th[e] job, either with or without a reasonable accommodation." *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 135 (2d Cir.1995) (citing *School Bd. v. Arline*, 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987)). In premising his first argument upon Metro–North's asserted disbelief that Teahan's excessive absenteeism resulted from substance abuse, Teahan assumes that even if Metro–North reasonably believed that Teahan would relapse into excessive absenteeism resulting from causes other than substance abuse, a violation of the Act would nonetheless be established. We doubt that this is so, but need not decide the question because we disagree with Teahan's characterization of the district court's factual findings. We also need not decide in this case whether the phrase "otherwise qualified individual" in § 794(a), *see supra* note 1, should be addressed at trial in terms of an employer's subjective view of an employee's qualifications.

It is not nearly as clear as Teahan claims that Metro–North, at the time it discharged him, believed that (1) Teahan's excessive absenteeism did not result from substance abuse, so that (2) the issue of recurrence of absenteeism had no connection to the likelihood of recurrence of substance abuse. The district court found: (1) that Metro–North did not believe that Teahan "was using illegal drugs and/or alcohol" on December 28, 1987, when Smith decided to dismiss Teahan, or on February 3, 1988, when Teahan returned to work after successfully concluding a rehabilitation program, 1994 WL 719720 at *7, and specifically (2) that Smith was not aware in late December 1987 that Teahan was a substance abuser, *id.* at *6. Indeed, Teahan was not "using" drugs or alcohol at any time after December 25, 1987, the date on which the district court found that he had permanently discontinued their use. *Id.* at *5.

This hardly amounts to a determination that when Teahan was discharged on April 11, 1988, Metro–North held the view that there was no connection between Teahan's historic, excessive absenteeism and his substance abuse. At the March hearing that intervened before Teahan's dismissal on April 11, 1988, Teahan testified that his history of absenteeism at Metro–North was caused by his addiction to alcohol and drugs, but that he had successfully undertaken treatment to address the problem.

Teahan also testified implausibly at that hearing about how he came into possession of copies of pages that had been torn out of a Metro–North log book that bore upon his attendance record. The district court found that Teahan had "surreptitiously removed" these pages, and had been put on notice by Metro–North that he would be subject to a "disciplinary investigation" concerning their removal (which was mooted by his dismissal). 1994 WL 719720 at *6 & n. 3. The court noted that Teahan had later "admit[ted] that at his disciplinary hearing in March 1993 and subsequent deposition in May 1993, he lied, in the latter instance under oath, concerning the logbook incident." *Id.* at *6.

Smith's trial testimony concerning the alleged link between Teahan's historic absenteeism and his substance abuse was equivocal. Smith testified that he generally found Teahan not to be credible, especially because of Teahan's hearing testimony concerning the log book. Thus, Smith considered Teahan's claim that his history of excessive absenteeism resulted from substance abuse to be a "ploy[ ]," or "charade," to cover up Teahan's dismal attendance record, and did not believe "as of April 11[, 1988] . . . that [Teahan] had a substance abuse problem." An affidavit by Smith was introduced in evidence, however, which contained the following statement:

> Based on his testimony, I concluded that Teahan had not, as he claimed, fully recovered from his substance abuse and that even if he had recovered, he would remain an undesirable employee for reasons other than his past absenteeism offenses. Under these circumstances, I saw no reason to show him leniency; and, thus, fired him on the absenteeism charges. I did not terminate his employment because of his past substance abuse.

■ We do not read this record as sustaining Teahan's claim on appeal that Metro–North had entirely discounted substance abuse as the cause of Teahan's historic ab-

senteeism. Rather, the trial evidence is directly addressed to whether Teahan was engaging in substance abuse at times (December 28, 1987, February 3, 1988, and April 11, 1988) when he concededly had stopped doing so. Further, it would hardly serve the ends of justice to rule that because Teahan's transparently false testimony at the March 1988 hearing concerning the log book incident prompted Smith to be justifiably skeptical about anything Teahan claimed, including the asserted link between substance abuse and Teahan's historic absenteeism, Metro–North is therefore liable to Teahan for a violation of the Act. "Section 504 simply insures [an employer's] even-handed treatment of a handicapped [employee] who meets reasonable standards so that he or she will not be discriminated against solely because of the handicap." *Doe,* 666 F.2d at 775.

We accordingly reject Teahan's claim that Metro–North had completely dismissed the possibility of any link between Teahan's historic absenteeism and his substance abuse, with the result that Metro–North could not have made a "reasoned decision" concerning the likelihood of a recurrence of absenteeism resulting from substance abuse.

B. *The Expert Testimony.*

▮ As previously noted, the district court entertained expert testimony regarding the likelihood of a recurrence of substance abuse by Teahan and made findings adverse to Teahan premised upon that testimony. Teahan contends that in doing so, the district court contravened the Supreme Court's recent teaching in *McKennon v. Nashville Banner Publishing Co.,* —— U.S. ——, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). We disagree.

In *McKennon,* the Supreme Court confronted the issue

> whether an employee discharged in violation of the Age Discrimination in Employment Act of 1967 is barred from all relief when, after her discharge, the employer discovers evidence of wrongdoing that, in any event, would have led to the employee's termination on lawful and legitimate grounds.

*Id.* at 882. The Court answered the question in the negative, ruling that "[t]he employer could not have been motivated by knowledge it did not have and it cannot now claim that the employee was fired for the nondiscriminatory reason," *id.* at 885, although the employer might be entitled to some diminition of the remedy afforded the employee, *id.* at 885–87.

▮ In this case, Metro–North did not offer its psychiatric testimony to present an alternative, "legitimate" motive for dismissing Teahan. It offered this evidence to prove that its decision to dismiss Teahan had a reasonable basis under all the facts as they existed at the time of the dismissal. As we stated in *Teahan I,* the issue "whether the employee is 'otherwise qualified' as of the date of termination is forward-looking and enables the employer to consider how the employee will perform as compared to non-handicapped individuals." 951 F.2d at 521 (citing *Doe,* 666 F.2d at 776). Thus, the expert testimony at trial was necessarily predictive. Accordingly, the rule announced in *McKennon* has no application here.

### Conclusion

The judgment of the district court is affirmed.