**Isabelo VALLEJO SERRANO, Plaintiff,**

v.

**CIGNA INSURANCE COMPANY, et al., Defendants.**

**Civil No. 94-2340(JAF).**

United States District Court,
D.  Puerto Rico.

June 14, 1996.

---

their burden on summary judgment, which they have failed to do.

Zuleika Llovet–Zurinaga, San Juan, PR, for Plaintiff.

Pedro J. Manzano–Yates, Fiddler Gonzalez & Rodriguez, San Juan, PR, for Defendants.

## OPINION AND ORDER

FUSTE, District Judge.

### I.

### Introduction

Before the court is defendants' motion for summary judgment on plaintiff's claims of age and disability discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634 (1988), the Americans With Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213 (1990), the Puerto Rico Antidiscrimination Act, 29 L.P.R.A. §§ 146–151 (1995), and the Puerto Rico Discharge Indemnity Law, 29 L.P.R.A. §§ 185a–185m (1995). After a thorough review of the record, this court **GRANTS** defendants' motion with regard to the federal claims and dismisses the Puerto Rico claims without prejudice.

### II.

### Factual Background

Cigna's Accounting Department is divided into several divisions: General accounting, accounts receivable, and systems. Employees of the general accounting division are in charge of the proper registration of accounting information in the appropriate ledgers or record books and maintaining controls as well as statutory compliance. Employees in

the accounts receivable section are in charge of collections, obtaining account payments, and analyzing accounts. *Docket Document No. 12. Exhibits II & III.*[1] In 1986, Cigna hired Mr. Vallejo for the position of Accounting Clerk Senior for its Accounting Department. *Id., Exhibit I.*

Sometime in 1990, the Comptroller's office, headed by Mr. Alexis Cardona, started supervising the employees assigned to the general accounting section: Ms. Elaine Mora and plaintiff, Mr. Vallejo. *Id., Exhibit II.* The supervisor of collections, Mr. Rubén Bermúdez, supervised two employees, Nélida Robles and Félix Vázquez.

During a May 1992 Financial Review meeting,[2] Mr. Cardona and Mr. Emilio Cosío, Cigna's Finance Officer for Latin America, met to evaluate the operations of Cigna's Accounting Department in Puerto Rico. They discussed the possibility of eliminating one accounting clerk senior position. *Docket Document No. 12 Exhibit* II.

A month later, on June 5, 1992, Mr. Vallejo began treatment at the State Insurance Fund (SIF) due to an emotional condition. By July 14, 1993, the SIF discharged Mr. Vallejo. *Id., Exhibit 6.*[3] While Mr. Vallejo was under treatment, his duties were assumed by the remaining employees in the Accounting Department. *Id, Exhibit II.* Since Mr. Vallejo's duties were being easily and efficiently assumed by the remaining employees, Mr. Cardona realized that the Accounting Department could function without the extra accounting clerk position. Mr. Cardona notes that this fact is consistent with the discussions held with Mr. Cosio. *Id., Exhibit II.*

Although between August and September of 1992, Mr. Luis Flamand, Cigna's General Manager, and Mr. Cardona prepared the 1993 budget, which accounted for the elimination of one position in the Accounting De-

partment, it was not until August 1993, that Cigna eliminated Mr. Vallejo's position in the Accounting Department. *Id.* Cigna's management chose Mr. Vallejo because he was the Accounting Clerk Senior with the least seniority. *See Id., Exhibit V; Docket Document No. 20. Exhibit 1.*

Notwithstanding the elimination of Mr. Vallejo's position, Cigna did not discharge plaintiff. Instead, on September 3, 1993, Mr. Cardona and Mr. Bermudez met with Mr. Vallejo and offered him a position as stockroom clerk, since they needed someone to handle purchasing matters at the stockroom. *Id.* As a stockroom clerk, Mr. Vallejo would continue to receive the same salary and benefits he had been receiving as an accounting clerk senior. Cigna needed an employee with basic accounting knowledge to handle certain purchasing operations in the stockroom. Because Vallejo had experience handling accounting matters, Mr. Cardona chose him for the job. *Id.* When Mr. Vallejo complained that he could not perform the lifting duties of a stockroom clerk due to his incontinence problem, Mr. Cardon told Mr. Vallejo that a temporary employee would be in charge of such duties. *Id.*

In September 1993, Mr. Vallejo was on sick leave for several days. Then, on September 14, 1993, he went back to the SIF seeking psychiatric treatment. *Id., Exhibit X.* He underwent treatment until September 12, 1994. *Id., Exhibit, IX.* The next day, Mr. Vallejo sent a letter to Cigna, stating that he was available for work. *Id. Exhibit XI.* Since Mr. Vallejo had failed to report to work within 360 days, the time allotted by law for employees receiving treatment at the SIF to report to their employers, Cigna denied Mr. Vallejo reinstatement. *Id.. Exhibit XII.*

Plaintiff has filed a claim against his ex-employer, alleging that the elimination of his position and Cigna's denial of reinstatement

---

1. Defendant has not explained what are the functions of the systems section.

2. Cigna officials hold this meeting on a yearly basis, in order to examine the Accounting Department's operations. *Docket Document No. 12. Exhibit II.*

3. The parties aver that Mr. Vallejo received treatment at the SIF from an unspecified date in June 1992, to July 14, 1992, and, as a result, he was absent from work for a month and nineteen days. However, the documents submitted to this court regarding the SIF treatment show June 5, 1992, as the commencement date, and July 14, 1993, as the release date. *See Docket Document No. 12. Exhibit 6.*

was motivated by Cigna's desire to terminate him due to his age and disability. Cigna has responded that it was motivated by a legitimate business concern to lower operations costs by eliminating plaintiff's work position. Cigna also avers that it denied plaintiff reinstatement because plaintiff did not request reinstatement within 360 days of being under SIF treatment as mandated by law.[4]

## III.

### Applicable Legal Standards

### A. Standard for Summary Judgment

A district court should grant a motion for summary judgment "if the pleadings, depositions, and answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 894 (1st Cir.1988). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), and "genuine", "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The burden of establishing the nonexistence of a "genuine" issue as to a material fact is on the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 2556–57, 91 L.Ed.2d 265 (1986). This burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and, (2) an ultimate burden of persuasion, which always remains on the moving party. *Id.*

Although the ultimate burden of persuasion remains on the moving party, the nonmoving party will not defeat a properly supported motion for summary judgment by merely underscoring the "existence of *some* alleged factual dispute between the parties;" the requirement is that there be a *genuine*

issue of *material* fact. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. at 2510. Likewise, a non-movant will not normally defeat the motion by discrediting testimony presented by movant. *Id.* at 256–57, 106 S.Ct. at 2514–15. Under Rule 56(e) of the Federal Rules of Civil Procedure, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

### B. AREA

Under a disparate treatment theory, and in the absence of direct evidence of age discrimination, we follow the familiar *McDonnell Douglas* burden-shifting paradigm developed for Title VII claims. *McDonnell Douglas, Inc. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973). *See Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1117 (1st Cir.1993); *Lawrence v. Northrop Corp.,* 980 F.2d 66, 68 (1st Cir.1992); *Mesnick v. General Elec. Co.,* 950 F.2d 816, 823–24 (1st Cir.1991), *cert. denied,* 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). First, plaintiff must establish a *prima facie* case by showing (1) that the fell within the ADEA's protected age group—that is, more than forty years of age; (2) that he met Cigna's legitimate performance expectations; (3) that he experienced adverse employment action; and (4) that Cigna did not treat age neutrally or retained younger persons in the same position. *Vega v. Kodak Caribbean, Ltd.,* 3

---

4. In his complaint, plaintiff alleged that defendant had retaliated against him "due to his actions taken in order to enforce his rights under the law." *Docket Document No.1.* ¶ *30.* Neither party has addressed this claim in any of their motions. We assume, therefore, that plaintiff has desisted from pursuing this claim.

F.3d 476, 479 (1st Cir.1993); *Connell v. Bank of Boston*, 924 F.2d 1169, 1172 (1st Cir.1991).

Once plaintiff establishes his *prima facie* case, a presumption that the employer unlawfully discriminated against the employee is created, *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981), and we begin the second stage of our analysis: The burden of production shifts to the defendant–employer to state some legitimate, nondiscriminatory reason for the employee's termination. *Mesnick*, 950 F.2d at 823. We note, however, that the burden of persuasion always remains with the plaintiff–employee at all times. *Lawrence*, 980 F.2d at 69; *Mesnick*, 950 F.2d at 823. If the defendant sustains its burden of production, the presumption of unlawful age discrimination is dispelled. It is then that the plaintiff must demonstrate that the employer's proffered reason for the alleged adverse employment action was pretextual, and that the real motive behind the action was age discrimination. *Lawrence*, 980 F.2d at 69–70. The plaintiff must do more than cast a doubt on defendant's justification for the challenged action; there must be a sufficient showing that discriminatory animus motivated the employer's action. *Mesnick*, 950 F.2d at 824. Direct or indirect evidence of discriminatory motive may do, but "the evidence as a whole ... must be sufficient for a reasonable fact finder to infer that the employer's decision was motivated by age animus." *Connell*, 924 F.2d at 1172 n. 3. The plaintiff must pass this last hurdle in order to thwart defendant's motion for summary judgment.

## C. *ADA*

Several courts have applied the *McDonnell* scheme to cases filed under ADA. *See Price v. S–B Power Tool*, 75 F.3d 362 (8th Cir. 1996), *petition for cert. filed*, —— U.S. ——, 117 S.Ct. 274, 136 L.Ed.2d 197 (1996); *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394 (5th Cir.1995); *Ennis v. National Ass'n of Business and Educational Radio. Inc.*, 53 F.3d 55 (4th Cir.1995); *DeLuca v. Winer Industries. Inc.*, 53 F.3d 793 (7th Cir.1995). Some of our sister district courts have likewise employed the *McDonnell* framework in deciding ADA claims. *See Nedder v. Rivier College*, 908 F.Supp. 66 (D.N.H.1995); *Braverman v. Penobscot Shoe Co.*, 859 F.Supp. 596 (D.Me.1994). We also apply the *McDonnell* paradigm to the present case. In the case before us, plaintiff's alleges that Cigna eliminated his job position and eventually dismissed him on account of his disability. This allegation is no different from the standard discrimination claim pled under Title VII.

ADA itself contains a broad, Title VII–like nondiscrimination duty, prohibiting a covered entity from discriminating against a "qualified individual with a disability" on the basis of that individual's disability with respect to any term, condition, or privilege of employment. *See* 42 U.S.C. § 12112 (1990); 42 U.S.C. § 2000e–2 (1988). ADA also includes a definition of discrimination similar to Title VII's definition. *See* 42 U.S.C. § 12112(b); 42 U.S.C. § 2000e–2. Congress expressly codified in ADA the disproportionate impact theory of discrimination that has been developed in Title VII cases, *see* 42 U.S.C. § 12112(b)(3) (1990), and adopted the "reasonable accommodation" and "undue hardship" language of Title VII, although it expanded the definition of these terms in ADA. *See* 42 U.S.C. § 12111(9) & (10); 42 U.S.C. § 2000e(j). Section 12117 of ADA incorporates all the enforcement mechanisms and remedial provisions of Title VII. 42 U.S.C. § 12117. Thus, because both AD and Title VII proscribe discriminatory conduct in the employment sphere, we believe that the manner by which an ADA plaintiff establishes a *prima facie* case can be similar to the manner employed by a Title VII claimant.

ADA's precursor is the Rehabilitation Act of 1973, 29 U.S.C. 794–794a (1988), which proscribes government agencies, federal contractors and recipients of federal aid from discriminating against individuals with disabilities. Because ADA was patterned after the Rehabilitation Act, both of these statutes aiming to deter unlawful discrimination toward the disabled, courts have construed ADA consistent with judicial interpretations of the Rehabilitation Act. *Patton v. TIC United Corp.*, 77 F.3d 1235 (10th Cir.1996), *petition for cert. filed*, 64 U.S.L.W. 3741

(U.S. April 22, 1996) (No. 95–1707); *Collings v. Longview Fibre Co.*, 63 F.3d 828 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 711, 133 L.Ed.2d 666 (1996); *Wooten v. Farmland Foods,* 58 F.3d 382 (8th Cir.1995); *Flynn v. Raytheon Co.,* 868 F.Supp. 383 (D.Mass.1994). The *McDonnell* framework has bee used in evaluating claims pursuant to the Rehabilitation Act, *Crawford v. Runyon,* 37 F.3d 1338 (8th Cir.1994), *appeal after remand,* 79 F.3d 743 (8th Cir.1996); *Barth v. Gelb,* 2 F.3d 1180 (D.C.Cir.1993), *cert. denied,* 511 U.S. 1030, 114 S.Ct. 1538, 128 L.Ed.2d 190 (1994); *Teahan v. Metro–North Commuter R. Co.,* 951 F.2d 511 (2nd Cir. 1991), *cert. denied,* 506 U.S. 815, 113 S.Ct. 54, 121 L.Ed.2d 24 (1992), *on remand,* 63 U.S.L.W. 2511, 1994 WL 719720 (S.D.N.Y., Dec.27, 1994) (No. 88 CIV. 5376(BN)), *judgment aff'd,* 80 F.3d 50 (2nd Cir.1996).

Nonetheless, we are aware that the *McDonnell* paradigm requires certain modifications when applied to an ADA case. To constitute *prima facie* case of employment discrimination under ADA, plaintiff must show that: (1) he was "disabled" as that term is defined ADA; (2) he was qualified, with or without accommodation, to do his job; (3) he was discharged; and (4) he was replaced by a non–disable person. *Nedder,* 908 F.Supp. at 74. *See McDonnell,* 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13 ("[t]he facts necessarily will vary in Title VII cases, and the specification above of the *prima facie* proof required from respondent is not necessarily applicable in every respect to differing factual situations").

## IV.

### Discussion

The parties agree that Mr. Vallejo establishes the first three prongs necessary to constitute his *prima* facie case of employment discrimination: He belonged to the protected class; he met Cigna's legitimate job expectations; he experienced an adverse employment action when Cigna eliminated his job position and later denied hi reinstate-

ment after his SIF treatment. Cigna argues that Mr. Vallejo has not established the fourth element. We agree.

We realize that plaintiff's initial burden of making out a *prima facie* case of discrimination is not onerous. *Mesnick,* 950 F.2d at 823. However, plaintiff has failed to set out a *prima facie* case of discrimination, even viewing the facts in the light most favorable to plaintiff. We believe that plaintiff's age or disability was not a factor when Cigna decided to eliminate Mr. Vallejo's position, and later deny him reinstatement.

After several meetings among management members, defendant eliminated Mr. Vallejo's position. Cigna eliminated Mr. Vallejo's position because the Accounting Department could operate efficiently without the extra accounting clerk position. Upon reviewing the seniority of all of the accounting clerks, Cigna chose to eliminate Mr. Vallejo because he was the clerk with the fewest years of service at the company. Remaining employees in the Accounting Department performed the work formerly done by Mr. Vallejo. Plaintiff was not replaced with another employee assigned to perform plaintiff's duties. In *LeBlanc v. Great American Insurance Co.,* 6 F.3d 836, 844 (1st Cir.1993), *cert. denied,* 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994), the First Circuit Court of Appeals held that a discharged employee "is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work"; "[a] person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." *Citing Barnes v. GenCorp Inc.,* 896 F.2d 1457 (6th Cir.), *cert. denied,* 498 U.S. 878, 111 S.Ct. 211, 112 L.Ed.2d 171 (1990).

In 1992, while Mr. Vallejo was receiving treatment at the SIF, Cigna reassigned Mr. Vallejo's duties to the other accounting clerks: Felíx Vázquez, Elaine Mora, and Nélida Robles.[5] Although these three employ-

---

5. In his sworn statement, Mr. Cardona stated that these three employees are Accounting Clerk Seniors. *Docket Document No. 12. Exhibit II.*

But, in the Accounting Department Employee List, Mr. Vázquez and Ms. Mora appear with the title of Accounting Clerk Senior, and Ms. Robles'

ees are younger than defendant, they were all hired before Mr. Vallejo and, consequently, had more seniority. *See Docket Document No. 20, Exhibit 1.* Since the Accounting Department was handling the workload without the help of Mr. Vallejo, Cigna decided to eliminate one accounting clerk senior position in June 1993, and chose Mr. Vallejo because he was the accounting clerk with less seniority at the company. Nonetheless, Cigna did not discharge plaintiff. Cigna offered plaintiff work as a stockroom clerk. Once plaintiff complained about his inability to complete lifting tasks in the stockroom because of his incontinence problem, Cigna reasonably accommodated plaintiff's disability by offering to hire a temporary employee for heavy lifting jobs.

■ Cigna's refusal to reinstate plaintiff after his release from the SIF was not of a discriminatory animus. Cigna refused to reinstate Mr. Vallejo because he did not request reinstatement within a period of 360 days after commencing treatment at the SIF. Pursuant to the Puerto Rico Workmen's Accident Compensation Act, when an employee is receiving treatment at the SIF, an employer has the duty to reserve an employee's job for a period of 360 days. 11 L.P.R.A. § 7 (1978). *See Torres–González v. Star Kist Caribe,* 94 J.T.S. 5 (1994). From September 14, 1993, to September 13, 1994, more than 360 days had elapsed. Cigna did not reinstate Mr. Vallejo because he missed this twelve-month deadline, which is a term of caducity. *Torres–González,* 94 J.T.S. 5, at 11458. *See R.P. Farnsworth & Co. v. P.R. Urban Renewal & Housing Corp.,* 289 F.Supp. 666 (D.P.R.1968) (the purpose of the caducity term is to determine a specific amount of time during which a cause of action may be exercised).

In response to defendant's motion for summary judgment,[6] plaintiff maintains that an-

other accounting clerk, Félix Vázquez, was reassigned to perform plaintiff's duties in the general accounting section. In support of his claim, plaintiff refers us to the deposition of Mr. Bermúdez. In his deposition, Mr. Bermúdez does admit that Mr. Vázquez did assume more of Mr. Vallejo's duties than the other two accounting clerks because Mr. Vázquez had more disposable time. *Docket Document No. 20, Exhibit 3, pp. 174–79.* Nonetheless, Mr. Bermúdez corroborated that Mr. Vallejo's duties where absorbed by the remaining three accounting clerks, and by Mr. Bermúdez himself. *Id.*

Plaintiff also argues that Cigna should have eliminate Mr. Vázquez' position because the volume of work in the collection department had been declining due to a slowdown in business. *Docket Document No. 20. Exhibit 3. pp. 135–36.* Plaintiff appears to view Cigna's Accounting Department as one neatly divided into different sections, with each section having employees performing discrete duties that are not interchangeable. Although each accounting clerk was assigned to different sections of the Accounting Department, it appears that collections clerks performed work assigned to the general accounting clerks, and vice-versa. In his deposition, when describing his general duties, Mr. Vallejo testified that he did general accounting and collections work. *Docket Document No. 12 Exhibit 14.* When Mr. Vallejo was undergoing treatment at the SIF, management reassigned Mr. Vallejo's work to all of the accounting clerks, irrespective of whether they were assigned to the general accounting or collections section. Even Mr. Bermúdez did some of Mr. Vallejo's tasks. *Docket Document No. 20, Exhibit 3, pp. 174–79.* Mr. Cardona testified that clerks in the general accounting section also performed some accounts payable duties. *Docket Docu-*

with that of Accounting Clerk 3. *See Docket Document No. 20. Exhibit 1.* However, parties have not noted an difference between these two positions.

6. We note that plaintiff did not separately file a statement contested facts as required by Rule 311.12 of the Rules of this Court, but did, in a very sketchy fashion, include a statement of contested facts in his memorandum of law in support of his opposition to defendant's motion for summary judgment. *See Laracuente v. Chase Manhattan Bank,* 891 F.2d 17, 19 (1st Cir.1989) (when nonmovant does not submit a statement of controverted facts along with opposition to motion for summary judgment, the court will, in accordance with Rule 311.12, accept movant's statement of material facts as uncontroverted and admitted by nonmovant).

*ment No. 20. Exhibit 2, pp. 76–77.* This interchange of duties probably results from a small accounting department, where everyone must pick up the slack whenever one team member is out. *See, Docket Document No. 20, Exhibits 1 & 2.*

Finally, plaintiff has presented no evidence to rebut defendant's explanation for not reinstating plaintiff. Plaintiff admits that he did not request reinstatement within the 360–day period. *Docket Document No. 12, Exhibit 9.* Plaintiff is also aware that Cigna had denied reinstatement to another employee for the same reason. *Docket Document No. 20. p. 18; Exhibit 13.*

## V.

### *Conclusion*

Plaintiff has failed to show that Cigna had a discriminatory motive behind the actions it took. Cigna eliminated Mr. Vallejo's position after considering operations, efficiency, and the seniority of each accounting clerk. Accordingly, we **GRANT** defendant's motion for summary judgment on all federal claims. We also **DISMISS** plaintiff's Puerto Rico law claims without prejudice of litigation in the Commonwealth court system. 28 U.S.C. § 1367 (1990).

**IT IS SO ORDERED.**